Common Pleas Court of Hamilton County.

DUDLEY M. OUTCALT V. HENRY URNER, AUDITOR.

Decided March 8, 1928.

*Dudley M. Outcalt* and *Dudley C. Outcalt*, for plaintiff.
*John D. Ellis*, city solicitor, for defendant.

DARBY, J.  (STRUBLE, J., concurring.)

This action was submitted to the court upon a general demurrer to the amended petition.

The General Assembly of Ohio passed the following statute, being Sec. 9573-1 G. C. (112 O. L., 135):

"The premium of any duly licensed surety company on the bond of any public officer, deputy or employe, shall be allowed and paid by the state, county, township, municipality or other subdivision or board of education, of which such person so giving such bond is such officer, deputy or employe."

The council of the city enacted an ordinance as follows:

"The reasonable compensation payable to lawfully authorized surety companies on the official bonds of city officers and employes shall be paid by the city out of funds of the respective departments in which said officers and employes are employed or serve."

After setting forth these provisions, the petition goes on to allege:

"that no other section of the General Code of Ohio or ordinance of the city of Cincinnati provides for the payment of the premium of a surety company or other surety, whether an individual or a corporation, on the bond of a public officer, deputy or employe."

The petition avers that the city officers, unless restrained, will make payments to such surety companies named in the statute, and ordinance, of the premiums on bonds, etc.

The claim of the plaintiff is that the section of the General Code and the ordinance aforesaid are unconstitutional and void, for the reason that they are discriminatory as between a surety company and an individual; that they interfere with freedom and liberty to contract, and that payments under their provisions, if permitted would constitute a misapplication of public funds. An injunction is asked, restraining the officers from making such payments.

The grounds upon which it is claimed that the section of the code and the ordinance are unconstitutional, to-wit, that they unfairly discriminate between a surety company and an individual, and that they interfere with freedom and liberty to contract, it is rather difficult to treat separately; the third ground, that the payment under their provisions would constitute a misapplication of public money stands by itself. Taking them up in the inverse order of their statement, the claim of misapplication of public funds will first be considered.

The case of *Lucas county* v. *State*, 75 O. S., 115, involved the validity of a law providing for the relief of worthy blind. It was held that provision that blind persons

"who have been residents of the state for five years, and of the county for one year, and have no property or means with which to support themselves, shall be entitled to and receive not more than twenty-five dollars per capita quarterly from the county treasury is unconstitutional for the reason that it requires the expendiutre for a private purpose, of public funds raised by taxation."

A very thorough examination of the right to apply public funds to such purpose is to be found in the opinion of the court.

It seems that the section of the Code in question would necessarily fall within the reasoning of the Lucas county case, in that, if the office holder is under obligation to give bond to the state or other public subdivision, that to require the state to pay the expenses of the bond would be such unlawful application of public funds.

In the case of *State* v. *Robins,* 71 O. S., 273, the question arose as to the constitutionality of an act of the General Assembly requiring executors and so forth of estates above a certain amount to give bond by a surety company. In holding the law to be unconstitutional the court considered the matter of the liberty of contract, and also the right to discriminate between personal sureties and surety companies (see p. 293.) While it was not involved in that case, the court calls attention in its opinion to the the provisions of the law requiring—

"that a public officer shall give bond with a surety company as surety, the premium to be paid out of the public funds. The effect of the latter. provision is to require the state, county, township or municipality to pay, to the enrichment of security companies each year, vastly more than it would lose by defaulting public officials; and it thus becomes evident that it would be more economical for the public to become its own insurer of the good faith of its officials, which would result, perhaps, in no official bond in any case. It does not seem to us, therefore, that any part of this statute was promoted by considerations of public welfare, and thence it follows that it is an unconstitutional restriction upon the liberty to contract which is guaranteed by Article 1, Section 1 of the Constitution of the state."

The court further, on page 294 points out that such provision would enrich a designated class of sureties to the exclusion of all others, and then goes on to say—

"Such a conclusion would lead not only to a violation of Article 1, Section 1 of our Constitution as already shown, but of Article 1, Section 2 also, which declares that a 'government is instituted for the equal protection and benefit' of the people."

The question involved in the Robins case was not the identical question here, as here the question is as to the validity of this law providing for payment of the prem-

iums in the case of surety companies, whereas there is no provision for the payment in case of private sureties.

In the case of *Andrews* v. *State, ex rel.,* 104 O. S., 385, the Supreme Court had before it the validity of the so-called bond commissioner law, which it held to be unconstitutional on several grounds, one being that it was not of uniform operation throughout the state. On page 388 of the decision, the court goes on to say:

"Again the legislature in this enactment discriminates against individuals and in favor of surety companies."

The examination of the law, so far as the court has been able to make it, fails to disclose any discrimination except as it relates to the holdings of the private surety, and the lien upon his real estate provided in the law. The unequal operation of this law, or its discriminatory character, is disclosed when it is considered that a particlar individual might not be able to procure a surety bond, but be forced to make bond with individuals as surety; in such a situation he would be under obligation to pay out of his own pocket any premium that the surety might require, whereas in case of the surety company bonds, the individual would be under no obligation to pay the premium, but it would be paid by the state or some subdivision of the state.

In view of the decision of Ohio quoted with reference to discrimination as between sureties, it would seem that the decision of the Supreme Court of Pennsylvania referred to in support of the demurrer can have no application.

Giving full effect to the presumption of validity, and with all the reluctance that a Nisi Prius court would have to declare an enactment of the legislature unconstitutional, the court is of the opinion that where the act seems to be clearly contrary to constitutional provisions, its fixed duty is to so declare it. The demurrer will therefore be overruled.